**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 12-cv-02175-WJM

WILLIAM R. STEVENSON,

     Applicant,

v.

WARDEN RAE TIMME, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

     Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on Petitioner William R. Stevenson's pro se

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging the

validity of his conviction and sentence imposed in Case No. 07CR508 in the Adams

County District Court.  Remaining for disposition are Petitioner's first and second claims

asserted in the Application.  Respondents have filed an Answer to those claims and

Petitioner has filed a Reply.  Having considered the Application and the Respondent's

Answer, along with the state court record, the Court concludes that the Application

should be denied.

## I.    Background

In On July 24, 2008, Petitioner was convicted by a jury of aggravated robbery in

Adams County District Court Case No. 07CR508.  (ECF No. 1, at 2 of 88).  He was

sentenced to a twenty-four year term of imprisonment.  (*Id.*).

The following summary of relevant facts is taken from the Colorado Court of

Appeals' decision in *People v. Stevenson,* No. 08CA2057 (Colo. App. June 23, 2011)

(unpublished decision):

> A man came into a Super Subs shop, pulled out a butcher knife, and demanded money from an employee. The employee complied, and the man fled. The employee immediately reported the robbery to the police.

> Through subsequent investigation, the police identified [Petitioner] as their prime suspect. The police ultimately arrested [Petitioner] and, during the ensuing interrogation, [Petitioner] confessed to robbing the Super Subs shop.

> The People charged [Petitioner] with aggravated robbery in violation of section 18-4-302(1)(b), C.R.S. 2010, a class 3 felony. After the jury found [Petitioner] guilty, the district court sentenced him to a term of twenty-four years in the custody of the Department of Corrections.

(ECF No. 13-3, at 4).

The Colorado Court of Appeals affirmed Petitioner's conviction on direct appeal.

(ECF No. 13-3).  The Colorado Supreme Court denied his request for certiorari review

on March 5, 2012.  (ECF No. 13-5).

Petitioner did not file any motions for post-conviction review in the state trial

court.

Petitioner initiated this action on August 16, 2012.  He asserts the following three

claims in the Application: (1) his Fourth Amendment right to be free from unreasonable

seizures was violated because his arrest was not supported by probable cause, and,

therefore, any evidence gathered subsequent to his arrest was inadmissible fruit of the

poisonous tree; (2) his Fifth Amendment privilege against self-incrimination was violated

because his *Miranda* advisement was inadequate, and, therefore, his subsequent

confession and any evidence obtained therefrom were inadmissible; and, (3) his Sixth Amendment right to speedy trial was violated when the trial court improperly continued the trial to allow him to obtain replacement counsel.  (ECF No. 1, at 10-33).

Upon preliminary review of the Application, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state remedies.  Respondents conceded that the Application was timely under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).  (ECF No. 13, at 2).  Respondents further conceded that Applicant exhausted state court remedies for claims one and two asserted in the Application. Respondents argued, however, and the Court agreed, that claim three is procedurally barred.  (ECF No. 13, at 7-8; ECF No. 23, at 11).  The Court further found that claim three presented, in part, a challenge to the state trial court's jurisdiction that is not cognizable on federal habeas review.  (ECF No. 23, at 11).   The Court therefore dismissed claim three.  (*Id.*).  Claims one and two of the Application were drawn to a District Judge and to a Magistrate Judge.   The Court reviews the merits of claims one and two below.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

3

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme court

at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390

(2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case sub judice.
> Although the legal rule at issue need not have had its genesis in the
> closely-related or similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id.* at

1018.  If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams*, 529 U.S. at 404–05.

> A state-court decision is contrary to clearly established federal law if: (a)
> "the state court applies a rule that contradicts the governing law set forth
> in Supreme Court cases"; or (b) "the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent."

4

> *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405). "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.' "
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly
> established federal law when it identifies the correct governing legal rule
> from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at
> 407–08.  Additionally, we have recognized that an unreasonable
> application may occur if the state court either unreasonably extends, or
> unreasonably refuses to extend, a legal principle from Supreme Court
> precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision

is 'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law."  *Maynard*,

468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted).  In conducting this analysis,

the Court "must determine what arguments or theories supported or . . . could have

supported[ ] the state court's decision" and then "ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**III.    Legal Analysis**

6

**A.      Claim One**

Petitioner asserts in his first claim that his Fourth Amendment right to be free from unreasonable seizures was violated because his arrest was not supported by probable cause, and, therefore, any evidence gathered subsequent to his arrest was inadmissible fruit of the poisonous tree.  (ECF No. 1, at 10).

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule.  *See, e.g., Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976).  In *Stone*, the Supreme Court limited federal habeas review for alleged Fourth Amendment violations based on the Court's determination that any additional contribution gained from consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the associated costs.  428 U.S. at 493-94.  The Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone*, 428 U.S. at 494.

The Supreme Court has not defined precisely the phrase "opportunity for full and fair litigation." *See Gamble v. State of Oklahoma*, 583 F.2d 1161, 1164 (10th Cir. 1978). In *Gamble*, the Tenth Circuit determined that the phrase:

> includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim.  It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)].  Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.

*Id.* at 1165. "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court willfully refuses to apply the correct and controlling constitutional standards." *Id.*

In this case, Petitioner filed a motion to suppress the evidence obtained from his warrantless arrest, including his inculpatory statements. (State Court R. vol. 1, at 25-27). The state trial court held an evidentiary hearing at which the investigating detective and Petitioner testified. (State Court R. 1/18/08 Hrg. Tr.). The trial court credited the testimony of the detective, ruled that the seizure of Petitioner was lawful, and denied the motion to suppress. (*Id.* at 88-96).

The Colorado Court of Appeals affirmed the trial court's ruling. The state appellate court determined that there was probable cause to arrest Petitioner based on the testimony of the detective at the suppression hearing. (ECF No. 13-3, at 2-3, 7-9, summarizing detective's testimony in 1/18/08 Hrg. Tr., at 13-35).

The Court finds that the state trial and appellate court proceedings sufficed to provide Petitioner with an opportunity for full and fair litigation of his claim. *See Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir.1999) (holding that petitioner was not entitled to habeas review of Fourth Amendment claim where petitioner's trial counsel informed the trial court of the factual basis for a Fourth Amendment claim, appellate counsel presented the issue to the state appellate court on direct appeal, and the state courts "thoughtfully considered the facts underlying petitioner's Fourth Amendment claim" but rejected it on the merits by applying appropriate Supreme Court precedents). The state courts relied on United States Supreme Court Fourth Amendment precedent in resolving Petitioner's claim through state case law applying

8

constitutional standards.  *See* State Court R., 1/18/08 Hrg. Tr., at 91-92 (citing *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968), and 93-94 (citing state probable cause standard similar to federal standard set forth in *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); ECF No. 13-3, at 6-7 (citing *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo. 2011) (citing  U.S. Const. amends. IV, XIV); and *People v. Brown*, 217 P.3d 1252, 1255-56 (Colo. 2009) (citing *Terry*, 392 U.S. at 8-9, and *People v. Martinez*, 200 P.3d 1053, 1057 (Colo. 2009) (citing *Gates*, 462 U.S. at 238).

Petitioner's mere disagreement with the result of his suppression hearing does not demonstrate that the state courts failed to recognize, or wilfully ignored, controlling legal standards.  Moreover, Petitioner's reliance on the legal principles articulated in *Wong Sun v. United States*, 371 U.S. 471 (1963) and *Brown v. Illinois*, 422 U.S. 590, 602-04 (1975) is misplaced.  In *Wong Sun*, the Supreme Court recognized that "verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." 371 U.S. at 485.  In *Brown*, the Supreme Court held that in-custody statements which stemmed from an illegal arrest were not admissible at trial merely because the defendant had been given *Miranda* warnings prior to making the statements.  422 U.S. at 605.  In both *Wong Sun* and *Brown,* the Court's determination of whether to exclude the defendant's confession was preceded by a ruling that the warrantless arrests were unlawful.  The present case is distinguishable because the state courts found that Petitioner's warrantless arrest was lawful under Fourth Amendment standards and did not reach the potential applicability of the exclusionary rule.

9

The Court finds that Petitioner is not entitled to federal habeas review for his Fourth Amendment claim because the state courts provided him an opportunity for full and fair litigation of that claim.  Claim one will be dismissed.

**B.     Claim Two**

For his second claim, Petitioner asserts that his Fifth Amendment privilege against self-incrimination was violated because his *Miranda* advisement was inadequate, and, therefore, his subsequent confession and any evidence obtained therefrom were inadmissible.  (ECF No. 1, at 19).  Specifically, Petitioner contends that the arresting officer failed to advise him that he had the right to an attorney *before and during* a police interrogation.  (*Id.*).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  Under the Fifth Amendment, statements a suspect makes during a custodial interrogation may not be used against him in court unless the government first advises the suspect of his rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).  These rights include the right to be "clearly informed," prior to custodial questioning, that the suspect has "the right to consult with a lawyer and to have the lawyer with him during interrogation." *Miranda*, 384 U.S. at 471; *Florida v. Powell*, 559 U.S. 50, 130 S.Ct. 1195, 1197 (2010) (quoting *Miranda*, 384 U.S. at 471).

The Supreme Court has repeatedly declined to dictate the particular words in which the *Miranda* warnings must be conveyed.  *See Powell*, 130 S.Ct. at 1204; *see also Duckworth v. Eagan*, 492 U.S. 195, 202 (1989) (commenting that the Court has

never required that *Miranda* warnings be given in the exact form described in that decision); *California v. Prysock*, 453 U.S. 355, 359–60 (1981) (remarking that *Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures).  In determining whether police officers adequately imparted the *Miranda* warnings, "[t]he inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Powell*, 130 S.Ct. at 1204 (quoting *Duckworth*, 492 U.S. at 203, quoting *Prysock*, 453 U.S. at 361).

The Colorado Court of Appeals rejected Petitioner's claim on the following grounds:

> Before an individual may be subjected to custodial interrogation, he must be advised that he has the right to remain silent, anything he says may be used against him, he has the right to have a lawyer present during the interrogation, and if he cannot afford a lawyer, one will be appointed for him. *Miranda*, 384 U.S. at 444; *accord Florida v. Powell*, 559 U. S. ___, ___, 130 S. Ct. 1195, 1203 (2010); *People v. Redgebol*, 184 P.3d 86, 93 (Colo. 2008). Once advised, however, a defendant may waive these rights. *People v. Mangum*, 48 P.3d 568, 571 (Colo. 2002). The prosecution bears the burden of proving that the defendant's waiver was knowing, intelligent, and voluntary by a preponderance of the evidence. *Martin*, 222 P.3d at 334; *People v. Miller*, 829 P.2d 443, 445 (Colo. App. 1991).

> At the suppression hearing, the detective testified that when he initially approached [Petitioner], he asked [Petitioner] to identify himself. When [Petitioner] responded, "William Stevenson," the detective told him to get out of the car, handcuffed him, and then moved him away from the car. The detective testified he then advised [Petitioner] of his *Miranda* rights, telling him:

>> He has a right to remain silent, anything that he say [sic] can and will be used against him in court. I told him he has a right to an attorney and if he cannot afford one, one will be presented to you. I told him he has a continuing right and he may choose to exercise it at any time.

The detective asked [Petitioner] if he understood those rights and was willing to speak with him.  [Petitioner] answered affirmatively to both questions.

After a brief exchange, during which [Petitioner] confessed to the robbery, the detective called for a vehicle to transport [Petitioner] to the police station. While they waited for the vehicle to arrive, the detective and [Petitioner] were "politely talking" when [Petitioner] suddenly fainted. Though the detective tried to catch him, [Petitioner] hit his head on the pavement. The detective immediately called an ambulance. [Petitioner] told the detective that he had not eaten, slept, or taken his medications in three days.

Once the medics arrived, they examined [Petitioner].  They asked him if he wanted to go to the hospital, but he declined. After determining that [Petitioner's] vital signs were okay, the medics released him back into the detective's custody. The detective testified that [Petitioner] seemed fine immediately thereafter and that nothing about his speech or manner changed.

At the police station, [Petitioner] was taken to an interrogation room. His handcuffs were removed and he was given food and water. The detective advised [Petitioner] of his *Miranda* rights a second time, using a standard advisement and waiver form. [Petitioner] signed the form and proceeded to speak with the detective for the next forty-five to sixty minutes.[1]

The detective described the interview as cooperative and nonadversarial. He also testified that [Petitioner] did not appear to be under the influence of any controlled substances during the interview.

    a.  Adequacy of the *Miranda* Advisement

[Petitioner] contends that the detective's *Miranda* advisement was inadequate because it failed to specify that [Petitioner] had a right to an

---

[1]At the suppression hearing, [Petitioner] testified that, after being handcuffed in the parking lot, he told the detective that he did not want to say anything and that he wanted a lawyer. He testified that he fainted as soon as the detective began to advise him; thus, he was not adequately advised. [Petitioner] also testified that he did not receive the *Miranda* advisement and waiver form at the police station until after the interview. The district court expressly credited the detective's version of the events in the parking lot and at the police station. Because the district court is in a superior position to determine the credibility of the witnesses, we defer to its findings. *See People v. Walker*, ___ P.3d ___, ____, 2011 WL 724673, *4 (Colo. App. No. 07CA1572, Mar. 3, 2011).

attorney before and during questioning, and that if he could not afford an attorney, one could be appointed before questioning. We disagree.

A *Miranda* advisement does not require specific words as long as it "conveys to the suspect a clear and understandable warning" of his rights. *People v. Hopkins*, 774 P.2d 849, 853 (Colo. 1989); *see Powell*, 559 U.S. at ___, 130 S. Ct. at 1204. Therefore, we will uphold the district court's finding that the advisement was adequate if supported by the record. *See People v. Hutton*, 831 P.2d 486, 489 (Colo. 1992).

Here, although the detective's oral advisement did not specify that [Petitioner] had a right to speak with an attorney before and during questioning, we believe it nonetheless clearly conveyed to [Petitioner] that he could ask for an attorney at any time from that point on. *See Powell*, 559 U.S. at ___, 130 S. Ct. at 1205 ("Although the warnings were not the clearest possible formulation of *Miranda*'s right-to-counsel advisement, they were sufficiently comprehensive and comprehensible when given a commonsense reading." (emphasis in original)); *California v. Prysock*, 453 U.S. 355, 359-61 (1981) (nothing in the advisement suggested any limitation on the right to the presence of an attorney different from the clearly conveyed right to an attorney in general); *People v. Gilmer*, 182 Colo. 96, 100-01, 511 P.2d 494, 496 (1973) (advisement was adequate where the officer used language similar to that used here).

Further, the advisement and waiver form that [Petitioner] signed clearly informed him that he had "the right to talk to a lawyer before questioning and have him present during questioning," and that if [Petitioner] could not afford an attorney, "one will be appointed for you before questioning."

Therefore, we conclude that the detective adequately advised [Petitioner] of his *Miranda* rights, and that the district court did not err in denying [Petitioner's] motions to suppress on this basis.

(ECF No. 13-3, at 10-14).

The state appellate court applied the correct federal standard in analyzing Petitioner's claim.  The Court must therefore determine whether the state court application of Supreme Court law was reasonable and whether it was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.

13

As an initial matter, the state courts did not credit Petitioner's story that he fainted as soon as the detective began to advise him of his *Miranda* rights in the parking lot at the time of his arrest.  Instead, the trial and appellate courts credited the detective's testimony that he advised Petitioner of his *Miranda* rights, while the Petitioner was fully conscious, and conveyed to Petitioner that he had "the right to an attorney," that "if he [could] not afford one, one [would] be presented to him," and that "he ha[d] a continuing right and he may choose to exercise it at any time."  (ECF No. 13-3, at 11-12 and n.1; State Trial Court R. 1/18/08 Hrg Tr. at 26).  Under AEDPA, Petitioner must show by clear and convincing evidence that this factual determination is incorrect.  28 U.S.C. 2254(e).  However, Petitioner fails to point to any evidence, other than his own testimony, that he fainted before he received a full *Miranda* advisement.  Testimony that merely contradicts the testimony of another individual on a point of fact is not clear and convincing evidence.  As such, this Court presumes that Petitioner received a *Miranda* advisement from the detective at the time of his arrest, as determined by the state courts.

To determine whether the Colorado Court of Appeals reasonably applied federal law in determining that the *Miranda* advisement was constitutionally adequate, the Court considers the factual circumstances and holdings of *Prysock*, *Duckworth*, and *Powell*.

In *Prysock*, the suspect was warned that he had "the right to talk to a lawyer before [he was] questioned, have him present with you while you are being questioned, and all during the questioning . . . ."  453 U.S. at 356–357.  The suspect was further advised of his right to have a lawyer appointed at no cost if he could not afford one.  *Id.* at 357.  The respondent contended, and the state court of appeals agreed, that the

14

suspect's *Miranda* advisement was deficient because he was not explicitly informed of his right to have an attorney *appointed* before questioning.  *Id.* at 358.  The Supreme Court reversed, observing that "[o]ther courts considering the precise question presented by this case—whether a criminal defendant was adequately informed of his right to the presence of appointed counsel prior to and during interrogation—have not required a verbatim recital of the words of the *Miranda* opinion but rather have examined the warnings given to determine if the reference to the right to appointed counsel was linked with some future point in time after the police interrogation."  *Id.* at 360.  The *Prysock* Court held that "nothing in the warnings suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right to a lawyer before [the suspect is] questioned, . . . while [he is] being questioned, and all during the questioning." *Id.* at 360-61. (internal quotation marks omitted).

In *Duckworth*, the police advised the suspect: "[Y]ou have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning, " and that a lawyer would be appointed "if you wish, if and when you go to court."  492 U.S. at 198.  The Seventh Circuit determined that the advice was constitutionally defective because it "link[ed] an indigent's right to counsel before interrogation with a future event."  *Id.* at 200 (internal quotations marks and citation omitted).  The Supreme Court disagreed and determined that the warnings, in total, were adequate to satisfy *Miranda. Id.* at 205.

In *Prysock* and *Duckworth*, the claimed deficiency in each *Miranda* advisement was that the right to counsel was linked to a future point in time.  By contrast, the

15

*Miranda* warnings given to Petitioner did not impose any limitations on the right to counsel.  The detective informed Petitioner that he had a "continuing right" to the presence of counsel that he could "exercise at any time."  (ECF No. 13-3, at 11).  The detective's statements were in the present tense, directed at the present moment, and "effectively communicated to [the defendant] that his right to appointed counsel existed at the time, not at some point in the future."  *United States v. Howe*, No. 04-4171, 139 F. App'x 61, 62 (10th Cir. 2005) (affirming and quoting *United States v. Howe*, 313 F. Supp.2d 1178, 1188 (D. Utah 2003), where the detective advised the defendant that he "had the right to an attorney," and if he "couldn't afford an attorney, one will be provided to you.").  Accordingly, the Court finds that the Colorado Court of Appeals' decision was not an unreasonable application of *Prysock* or *Duckworth*.

In *Powell,* the suspect was advised that he had "the right to talk to a lawyer before answering any of [the officers'] questions," and further that, with respect to the various rights recited in the *Miranda* warnings, "[y]ou have the right to use any of these rights at any time you want during this interview."  130 S.Ct. at 1200.  The Florida Supreme Court determined that the failure to advise the suspect expressly of the right to the presence of counsel during questioning rendered the *Miranda* warnings defective. *Id.* at 1200-01.  The United States Supreme Court reversed, holding that the advisement reasonably conveyed to the suspect that the right to counsel applied before and during the interrogation.  *Id.* at 1204-05.

The *Miranda* advisement that Petitioner received is not constitutionally inadequate simply because it is not as specific as the *Miranda* warnings given in *Powell*. Petitioner complains that the detective failed to specifically warn him of his right to

counsel before and during the interrogation.  The detective did, however, generally advise Petitioner that he had the right to an attorney that he could exercise "at any time," and that the right was "continuing."  Mindful that in reviewing the adequacy of *Miranda* warnings, the inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*, *see Powell*, 559 U.S. at 1204, the Court cannot conclude that the Colorado Court of Appeals' determination of Petitioner's claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. 786–87.  The Court finds that the state appellate court's conclusion that the advisement reasonably conveyed to Petitioner "that he could ask for an attorney at any time from that point on," and therefore comported with *Miranda*, was a reasonable application of Supreme Court law and was based on a reasonable determination of the facts in light of the evidence presented at the state court suppression hearing.  Petitioner cannot prevail on his second claim for relief.

## C.    Claim of Actual Innocence

In his Reply brief, Petitioner "supplements his Fourth and Fifth Amendment claims with a claim of factual innocence."  (ECF No. 42, at 1).  He argues that "without the illegally obtained and unlawfully admitted purported and later statement, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt."  (*Id.*).

A free-standing claim of actual innocence is not cognizable in a non-capital habeas corpus petition.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Sellers v. Ward*, 135 F.3d 1333, 1338-39 (10th Cir. 1998).  Moreover, Petitioner does not rest his

17

claim on any newly discovered evidence.  Instead, he asserts a ground of legal

innocence.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'actual

innocence'" means factual innocence, not mere legal insufficiency.")

Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal

from this order would not be taken in good faith and therefore *in forma pauperis* status

will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438

(1962).  If Petitioner files a notice of appeal he must also pay the full $455 appellate

filing fee or file a motion to proceed *in forma pauperis* in the United States Court of

Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is ORDERED:

1.    Petitioner William R. Stevenson's *pro se* Application for a Writ of Habeas Corpus
      Pursuant to 28 U.S.C. § 2254 is DENIED.

2.    No certificate of appealability will issue because Petitioner has not made a
      substantial showing of the denial of a constitutional right.

3.     Leave to proceed *in forma pauperis* on appeal is DENIED. Petitioner may file a
      motion in the Tenth Circuit Court of Appeals.

4.    Petitioner's Motion for Relief from Order (ECF No. 27) is DENIED. The Court
      declines to reconsider its November 5, 2012 Order denying Petitioner's Motion to
      Take Judicial Notice and For Limited Remand to the Colorado Court of Appeals
      (ECF No. 17) as moot.

5.    Petitioner's Request for Appointment of Counsel (ECF No. 40) and Request for
      an Evidentiary Hearing (ECF No. 41) are DENIED as moot.

6.    This case is DISMISSED WITH PREJUDICE.

Dated this 11th day of March, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge